(Decided 11th June, 1869.)

---

CHARLES HART SMITH *vs.* THE WASHINGTON GASLIGHT COMPANY.

*Set-off—Unliquidated Damages—Jurisdiction.*

An unliquidated and uncertain claim for damages cannot be set off against a judgment. In Equity, as at law, a set-off is only allowed where there is mutuality in the demands, and the amounts are certain and determined.

Where a plaintiff, located and doing business in the city of Washington, recovers a judgment in the Superior Court of Baltimore City, and the defendant has a claim for damages growing out of the same transaction, the mere fact, that the plaintiff is a non-resident, does not give a Court of Equity in Baltimore jurisdiction to restrain the judgment against the defendant, and to enforce a set-off.

APPEAL from the Circuit Court of Baltimore City.

The bill in this case was filed on the 8th of March,

1869, by the appellant. It charged that on the 18th of May, 1859, a contract was entered into between the appellee and one Charles Wilson, for the delivery to the latter of all the gas tar made by the former, and not wanted by it, for a specified purpose, from time to time, as called for by the latter, during the term of five years, the contract to be renewed at the end of that period for another like term; that the consideration to be paid to the company by Wilson was five hundred dollars a year, in semi-annual instalments, and in case of refusal to renew, the company engaged to refund to Wilson the payments made during the last year of the original term, Wilson agreeing to renew in any event; that this contract was assigned to H. C. Wilson & Co., who, on the 8th of April, 1861, assigned it to H. C. Wilson alone; that the rent for the last year of the original term was paid by H. C. Wilson on the 1st of December, 1863, and the 2d of June, 1864; that in November, 1864, the appellant, a stranger to all these parties, negotiated with H. C. Wilson for the purchase of said contract, and the lease of certain premises, which were necessary for the manufacture of what is called "Roofing," from said tar when delivered; that Wilson represented to the appellant that the appellee had renewed this contract for another term of five years at the same rent, and, in corroboration of said assertion, produced the receipts for the payments accruing in the last year of the original term, the last dated 2d June, 1864; that he further represented that he had been receiving the tar since the 1st of June, 1864, as before, and had made no payments therefor since that date, because, under the renewed contract, no more payments would be due until the 1st of December, 1864; that he also exhibited to the appellant the renewal on the 8th June, 1864, of the lease for five years of the premises, on which he had been manufacturing said tar into a composition for roofing houses; that being satisfied with the statements of Wilson, veri-

fied on inquiry, by the fact that the gas tar had been delivered to Wilson by the agents of the appellee, after as well as before the 1st of June, 1864, and without any apparent change in the manner or terms of the delivery, the appellant agreed to pay him for his right in said renewed contract and lease a large sum of money, and on the 1st day of December, 1864, actually paid Wilson $2,000 in cash, and executed his five notes at six, twelve, eighteen, twenty-four, and thirty months each for $2,000, and a sixth note at thirty months, also for $2,250, making a principal sum of $14,250; that on the same day, Wilson assigned the lease to the appellant, but as he professed to be short of funds for a few days, and could not produce the receipt for the payment of $250 rent, due on the 1st December, 1864, under the contract as renewed, the appellant declined then to take an assignment of his tar contract, and required him to give a written guarantee that the tar contract had been renewed, and that he would pay the rent due thereunder on the 1st December, 1864; that Wilson was then solvent, and in affluent circumstances, though now insolvent, and his guarantee was sufficient security for the truth of his representations, besides which the appellant could have then protected himself by refusing to pay some $12,000 of his notes not due; that on the 21st December, 1864, Wilson paid the $250 to Mr. Hall, the cashier of the appellee, and took his receipt for all the tar made at the appellee's works for six months, from 1st June, 1864, to 1st December, 1864, as per contract; that satisfying himself of the genuineness of the signature of the company, the appellant no longer hesitated, but took the assignment of the tar contract on the said 21st December, 1864, surrendered the written guarantee, which was destroyed before the filing of the bill, and went on to meet his notes at maturity; the bill further charged that shortly after the 21st December, 1864, Mr. Brown, " the secretary in charge " of the appellee, refused to deliver

any tar to the appellant, repudiated the renewal of the contract, and required that a new arrangement should be made; that a temporary arrangement was entered into between the appellee and the appellant; that during this temporary arrangement the appellant, on the 5th of July, 1866, filed a bill in the Supreme Court of the District of Columbia, against the appellee, a corporation duly incorporated by Congress, doing business and established in Washington, for a specific performance of the original contract which had been assigned to him, and to obtain compensation, in damages, for the time it was withheld; that said cause was so proceeded in that the bill was dismissed, and, upon appeal to the Supreme Court of the United States, the decree of dismissal was affirmed on the ground that the contract had not, in fact, been renewed for another term of five years; that while the suit was pending in Washington on appeal, an action at law was brought in the Superior Court of Baltimore City by the appellee against the appellant, to recover for certain gas tar, delivered by the former to the latter, under the temporary arrangement entered into between them; that a judgment was therein confessed in favor of the appellee, the same to be binding and of force only in the event that the suit so pending on appeal in the Supreme Court of the United States, should be decided against the appellant. The bill then charged that the Supreme Court of the United States having dismissed the bill of the appellant, the counsel for the appellee had threatened to issue execution against the appellant, under the judgment confessed as aforesaid; that the appellant, while admitting his legal liability under this judgment, claimed as against the appellee for the money which he had paid to Wilson as aforesaid, and the amount which he had paid to the appellee, or was then owing to it under the judgment, over and above the annual price mentioned in the contract; that the appellee was in law, and, by the principles of

equity, responsible to the appellant for all such payments which he had made by and through the acts and doings of its agents, officers, and servants; that the appellee was not a citizen or resident of the State of Maryland; and if the appellant were to pay said judgment, he would be compelled to institute an action against the appellee in a foreign jurisdiction, to recover from it the moneys wrongfully paid to it and the said Wilson, over and above the said contract price, and in which would be included the judgment confessed as aforesaid. The bill prayed that so much of the appellant's claim might be set off as was necessary to extinguish the judgment aforesaid, and that the balance of said claim might be paid by a decree of the Court, and the appellee enjoined from suing out execution on the said judgment, and for general relief. The cause having been submitted on bill and exhibits, the Court passed an order refusing the application for an injunction; and from this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER, and ALVEY, J.

*Robert J. Brent*, for the appellant.

*Edward Otis Hinkley*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

The bill in this case was filed to obtain an injunction to restrain execution on a judgment at law, and to have such judgment extinguished by set-off of alleged damages to which the appellant is supposed to be entitled as against the appellee.

Without determining whether the appellant's right to the damages alleged is not concluded by the decision of the Supreme Court of the District of Columbia, recently affirmed on appeal by the Supreme Court of the United

States, in the case of the appellant against the appellee, for specific performance, and compensation in damages for partial non-performance of the contract in regard to the gas-tar, we shall inquire whether the damages claimed by the appellant in this case, under the facts disclosed, form the proper subject-matter of set-off to the judgment against him.

Taking the allegations of the bill as true, as we are required to do on this application, the case stated forms no ground for the relief sought.

Set-off in equity is allowed upon the same general principles as at law. There must be mutuality in the demands, and the amounts should be liquidated and certain. And while the practice in equity may be more liberal than at law, in respect to *mutual credits*, set-off can no more be allowed in equity than at law, in cases of demands for uncertain damages, as on breaches of covenant, or for torts.

The principles governing Courts of Equity upon this subject, were very fully expounded by Chancellor KENT, in the case of *Duncan vs. Lyon*, 3 *John. Ch. Rep.*, 359; and, in tracing the doctrine, the Chancellor says: "The doctrine of set-off was borrowed from the doctrine of *compensation* in the civil law. Sir THOMAS CLARKE shows the analogy, in many respects, on this point, between the two systems; and the general rules in the allowance of compensation, or set-off by the civil law, as well as by the law of those countries in which that system is followed, are the same as in the *English* law. To authorize a set-off, the debts must be between the parties in their own rights, and must be of the same kind or quality, and be clearly ascertained or liquidated. They must be certain and determinate debts. (*Dig.* 16, 2 *de Compensationibus, Code*, 4, 31, 14, *and Code*, 5, 21, 1; *Ersk. Inst., Vol.* 2, 525, 527; *Pothier, Trait. des Oblig., Nos.* 587 *to* 605)."

And Mr. Justice STORY states the rule in very much the

same terms, and says, what appears to be established by all the authorities, that the mere existence of cross-demands will not be sufficient to justify a set-off in equity; and that it is only when the party seeking the benefit of it, can show some equitable ground for being protected against his adversary's demand, that set-off in equity will be allowed. 2 *Sto. Eq. Jur.*, secs. 1436, 1440, *and* 1441; *White vs. O'Brien*, 1 *Sim. & St.*, 551; *Rawson vs. Samuel*, 1 *Craig & Phil.*, 172.

The judgment here sought to be enjoined and extinguished by set-off, was voluntarily confessed, and there is no question as to the legality of the claim upon which it was founded; and the effort now is to have set-off as against such judgment, an unliquidated and uncertain claim of damages, alleged to have accrued by reason of the negligent or fraudulent conduct of the appellee's officers and agents. But it is clear such ground of claim are matters of wrong, sounding in unliquidated damages, and, therefore, not the proper subject of set-off; for, as was said by Chancellor KENT, in *Murray vs. Toland*, 3 *John. Ch. Rep.*, 575, when speaking of the right to set-off a similar unliquidated claim, "Such misconduct is properly to be inquired into, in a distinct suit for that purpose, and so it was decided in *Winchester vs. Hackley*, 2 *Cranch*, 342. It is also a subject of *legal*, and not of equitable jurisdiction." And being so, it would be unreasonable to delay the appellee in the collection of its judgment, until an action may be brought against it by the appellant to try the question of the right to the damages proposed to be set-off. It is true, one judgment may be set-off against another, but not a mere claim of unliquidated and uncertain damages on the one side, and an undisputed judgment on the other. For such an instance of set-off no case has been produced, and we suppose none can be found.

But the appellee is a corporation incorporated by the Congress of the United States, and established in the

District of Columbia, where the transactions occurred out of which the supposed claim for damages arose, and the appellant contends that the non-residence of the appellee, and the non-subjection of it to the jurisdiction of the Courts of this State constitute a special equity, or an equitable ground for being protected against the judgment threatened to be executed.

To this proposition, as applicable to the case before us, we cannot assent.

It is not pretended that the appellee is insolvent, nor that redress for any wrong that the appellant has suffered may not be had in the Courts of the United States, exercising jurisdiction over the District of Columbia. The transactions between the appellant and appellee took place in the District of Columbia, and there is the appropriate place for their investigation. The mere fact that the appellee is located and doing business in the city of Washington, does not give a Court of Equity here jurisdiction to restrain the judgment against the appellant, and to enforce a set-off. Of that question the case of *Beall vs. Brown*, 7 *Md.*, 393, is conclusive ; and, indeed, it was conceded by the appellant that if the doctrine of that case be applied to this, he could have no standing in Court.

It was contended, however, that the decision in *Beall vs. Brown*, asserted a doctrine very much broader than the requirements of the case, and that its authority should be restricted to what the facts required of the Court to decide. But, upon examination of the case, we fail to discover that the Court decided any proposition that was not fairly and fully presented. Nor is that case at all singular or anomalous, as seemed to be supposed by the appellant's counsel.

In the case of *Murray vs. Toland*, 3 *John. Ch. Rep.*, 569, before referred to, it was insisted that set-off should be allowed, because the complainant might have difficulty in obtaining satisfaction of his demand of a party who

resided in *Spain*, if the latter were permitted to recover judgment, and withdraw the fund in question. But Chancellor KENT, in answer to the application, said: "Such a principle would check all suits at law, and extend the doctrine of set-off to every possible case, if it so happened that the plaintiff at law was not within the jurisdiction of the Court. The inconvenience of following a party to his place of residence abroad, does not appear to me to be, of itself, a sufficient ground for departing from the settled doctrines of the Court. The Court cannot be governed by the mere question of comparative convenience. What would be proper, if the party resided in a country where there was no regular law or justice, or where he was absolutely inaccessible, is not a point before me. A residence at *Cadiz* is, surely, not such a case; nor is *Spain*, with all her infirmity, to be put out of the pale of civilized nations."

Entertaining no doubt of the correctness of the order refusing the injunction, we must affirm it, with costs to the appellee; and as there is no relief obtainable in this case, the bill will be dismissed.

*Order affirmed and bill dismissed.*

(Decided 15th June, 1869.)