Mr. Chief Justice Alvey
delivered the opinion of the Court:
*175 1. The first question is, whether by the terms of the contract, the appellees were required to do the polishing of the hard wood work before delivering it to the defendant in Washington.
In the letter of the appellees to the defendant, the proposition is made to furnish the interior wood work finish necessary to complete the Shoreham Annex. All hard wood work to be filled and stained as required, and all pine work to be primed. This to include window sash and frames; also forty-one wood mantels as per designs furnished by the architects; these mantels to be polished and plated, and all the above to be delivered free on board of car in Washington, &c. As to the mantels furnished, there is no question in respect to their finish. They were, by the express terms of the contract, required to be polished and plated, and they were so finished. But with respect to the other material furnished, did this proposal of the appellees contemplate the polishing of the work by them before delivery to the defendant? The polishing, it seems, was no inconsiderable part of the work to be done in order to a complete finish. It added largely to the value of the material, according to the claim of the defendant; and being so important a matter, if it was in fact in the contemplation of the parties, it ought to have been and would most likely have been expressly provided for, as was done in respect to filling and staining — items of work of less importance than polishing.
It is difficult, if not impossible, to say, upon any fair principle of construction, that it was contemplated by the proposal of the appellees that the latter should do all the polishing of the hard wood furnished before delivery, other than the mantels. If it did so contemplate, why was it not expressed? Why deem it necessary or proper to express the requirement as to the mantels, and not as to the rest of the work? As if to exclude the possibility of misunderstanding, the writer of the letter appears to have been careful to particularize the work to be done in the way of finish, and he says expressly that the hard wood work was to be filled and *176 stained as required, and all pine work to be primed; but not .a word about polishing. Now, certainly, if polishing had been part of the finish proposed, it would have been expressed. Moreover, there seems to have been strong reason for deferring the work of polishing until the material arrived in Washington; as in the handling and transportation of the polished material there would have been great risk and danger of having it seriously defaced and damaged.
It is contended, however, that the letter of the defendant, in response to the proposal of the appellees, did not accept the proposal in the sense and with the meaning that the polishing of the materials, other than the mantels, was not included; that the letter-of acceptance contemplated the polishing of all the hard wood work before delivery to the defendant in Washington. This contention is based upon the terms of the letter of acceptance, which declares: “Your proposition of the 20th inst. for furnishing mill work, mantels, etc., as per plans and specifications of Hubert, Pirsson & Hoddick, for the Shoreham Annex, this day received, and the proposition accepted.” What meaning was intended to be expressed by the terms, “ as per plans and specifications,” may admit of some doubt; but this reference to the plans .and specifications may have been in regard to the quantity, ■or nature and character of the material, and not to the special manner of its finish at the mill. It was incumbent upon the defendant to be plain and explicit, if he sought in any manner to vary the substance of the original proposal upon which he was called to act. The principle is settled upon authority as •it is in reason, that if the party to whom the offer is made does not accept it in the terms in which it is made, but seeks •to incorporate some new qualification or condition with the .acceptance, the party making the offer is not, of course, bound by such qualified or conditional acceptance. The acceptance must-be of the proposal as made. An acceptance, 'however, is not made conditional by an addition or qualifi- ■ cation which is wholly immaterial, nor by the existence of a -.misunderstanding between the parties as to the construction *177 of any mere collateral terms not part of the agreement itself. But. where a party accepts an offer, he must not adopt the proposed terms, and yet even slightly vary them, without calling the attention of the party making the offer to the fact of the variation. This is the principle laid down in the case cited on behalf of the appellees in Proprietors of English and Foreign Credit Co. v. Arduin, L. R. 5 H. L., 64. Of that case it was said by the Court of Chancery Appeals in the case of Harris (7 Ch. App., 587, 593), that the facts were such as persons might differ about, and the Exchequer Chamber had held one way, while the House of Lords held another. But the principle upon which both proceeded was, “ that where there is an acceptance of an offer, if there is to be a term or condition imposed, it must be clearly so stated, otherwise it is to be considered simply as a notification which may have such effect as it ought to have in a court of law.”
In this case, we think the offer did not embrace the polishing of any of the materials to be furnished, except the mantels, about the finish of which there is no question; and there is nothing in the letter of acceptance, when read in connection with the letter of proposal to which it was a response, that justifies the conclusion that any modification or enlargement of the terms of the proposal was intended. At any rate, no such modification or enlargement of the terms proposed is expressed.
2. As to the claim of the defendant Carver for additional amount of credit to that actually allowed for work and materials not furnished or required, because of changes in the plan of the building, we are of opinion that the defendant has not received a sufficient credit in that behalf. The ap-pellees allowed and deducted from the contract price, for work and materials not furnished, the sum of $958.25. The defendant, in his answer, swears that the work not furnished, including certain mantels claimed to be worth $265, was worth, at the rate or price for which the appellees contracted to furnish the wood work to the defendant, the sum *178 of $1,492.66. The defendant is, to a large extent, supported in this claim by the witness Norwood, who made an estimate of the work not furnished, other than the mantels, and his estimate of the value of such work was $1,164; but this, of course, included the polishing of the work. For that finish a reasonable deduction should have been made; for, as we have seen, the appellees were not bound by their contract to furnish the material- with that finish. Upon the evidence, we think, instead of a deduction for work not furnished of the sum of $1,492.66, claimed by the defendant, that a deduction from the contract price in that behalf of $1,265 will be just and reasonable; and that the decree should be modified in this respect.
3. The third ground of objection to the decree below we think cannot be sustained. It is insisted that there should be a recoupment or set-off allowed, as against the claim of the appellees, to the extent of $1,500, being the one-half of the amount of the penalty or forfeiture incurred and paid by the defendant, by reason of his failure to complete the building under his contract within the time prescribed. The ap-pellees were not privy to the contract of the defendant with the owner for the erection of the building. And though it is claimed by the defendant that it was by reason of the delay of the appellees in furnishing and delivering the material under their contract that the forfeiture was incurred (a fact, however, denied by the appellees), yet the appellees were no parties “to the settlement and allowance of $3,000 as forfeiture,” as between the defendant and the owner of the building; and, consequently, the appellees ’ were in no manner bound by that adjustment and allowance. If they committed a breach of their contract with the defendant they were liable therefor, it is true, but the damages were wholly unliquidated, and it was the right of the appellees to have the questions arising upon the alleged breach of contract tried in a court of law and passed upon by a jury. It is not within the province of a court of equity to undertake to determine such questions; and the parties interested in having them determined must resort to a court of law for their adjudication. *179 The mere existence of cross demands will not be sufficient to justify a set-off in equity. A set-off is ordinarily allowed in equity only when the party seeking the benefit of it can show some equitable ground for being protected against his adversary’s demand; and the mere existence of cross demands does not create such an equity. Hence, where the application in equity was for an account of transactions under a contract, and there was an action at law for damages for the breach of it, it was held that there was no right of set-off in equity. The object and the subject-matter, said the Chancellor, being totally distinct, the fact that the agreement had been the origin of both did not form any such bond of unity, as to furnish an equitable ground for restraining the action at law, and bringing to a court of equity the jurisdiction to determine the question of damages for the breach of contract. Rawson v. Samuel, 1 Cr. & Ph., 161, 178, 180; Glennie v. Imrie; 3 Y. & C., 440.
Chancellor Kent has laid down the correct doctrine upon this subject in the well known case of Murray v. Toland, 3 John. Ch., 575, where he said: “ If this settlement was not in the way, yet the claims of one of the plaintiffs would not be a proper subject of set-off, for they are founded upon che alleged negligence and misconduct of M., and these are matters of tort, sounding in unliquidated damages. Such misconduct is properly to be inquired into, in a distinct suit for that purpose; and so it was decided in Winchester v. Hackley, 2 Cranch, 342. It is also a subject of legal and not of equitable jurisdiction.” The same principle was held and followed in the case of Smith v. Washington Gaslight Co., 31 Md., 12, where many of the authorities are reviewed.
It follows from what we have said that the decree appealed from must be affirmed in part and reversed in part, and instead of a decree for $2,003.09, the amount of the decree below, this court will enter a decree for $1,696.34, in favor of the appellees. The costs to be paid in equal proportions— the one-half by the appellant Carver and the other half by the appellees.

Decree affirmed in fart and reversed in fart.