## CROOK, HORNER & CO. *vs.* BALTIMORE AND OHIO RAILROAD AND OTHERS.

*Warranty of an Ice Machine— Waiver of Strict Performance—Recoupment—Receivers' Certificates—Novation.*

Where the contract for the purchase of a certain machine specifies what it shall be capable of performing, and the maker agrees to run the same for a number of days after completion to demonstrate its efficacy, such stipulations constitute a warranty which is not waived by use of the machine, and the damages sustained by a breach of the warranty may be recouped in a suit by the seller for the price.

In such case, the sale of the machine by a trustee under a mortgage executed by the buyer of all of its property is not such an acceptance of the machine as excuses the seller from a performance of his contract, or entitles him to recover the contract price.

Where one party agrees to perform certain work upon machinery, and the plaintiff, with the concurrence of all the parties, agrees to complete the work according to that contract and be entitled to the payment promised the original party, the plaintiff's rights and liabilities are the same as those of the original contractor. .

A contract for a certain machine, warranted to be capable of doing specified work, was made by A. with the Receiver of a corporation ; and subsequently Receiver's certificates of indebtedness to the amount of the contract price were issued, upon the faith of a guaranty by the plaintiff to perform A.s' contract. The machine was not put in running order according to the contract, and was sold under a decree. *Held*, that the plaintiff was not entitled to enforce payment of the certificates, since the condition upon which they were issued was not performed.

Appeal from an order of the Circuit Court for Anne Arundel County (JONES, J.), sustaining exceptions to an auditor's account, distributing among creditors the funds of the Bay Ridge Company, and disallowing the claim of the appellants. This claim arose out of certain contracts between the Receiver of said company, appointed by said Court, and one Wm. H. Pitcher and the appellants, who became substituted, by agreement, to the rights and liabili-

ties of Pitcher under his contract with the Receiver. On
May 15, 1890, Pitcher agreed to erect and equip in working
order, within thirty days, a machine for making ice of a
clearly specified capacity, and the Receiver agreed to pay
for the same the sum of $4,500, in different instalments,
the last of which was to fall due on September 1, 1891.
This contract was not performed by Pitcher, and on Novem-
ber 10, 1890, an agreement was made between the Re-
ceiver and the appellants, which is set forth in the opinion
of the Court. Two of the certificates therein mentioned
were paid, but to the allowance of the remaining two in the
auditor's account, distributing the proceeds of the sale of
the property of the Bay Ridge Company, the appellee and
other creditors excepted.

The cause was argued before ROBINSON, C. J., BRYAN,
McSHERRY, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*Robert H. Smith* and *Alfred S. Niles* (with whom was
*Oscar Wolff* on the brief), for the appellants.

The legal effect of the contract made between the Re-
ceiver and Crook, Horner & Co. is (*a*) that the machine
was accepted by the Receiver; (*b*) that the Receiver's cer-
tificates were given Crook, Horner & Co. in full *payment*
for it; (*c*) that Crook, Horner & Co. gave their *promise* and
*agreement* that they would put the machine in good work-
ing order by May 15, 1891, and would cause the machine
to comply with the requirements of the Pitcher contract.

These promises are on either part clearly independent
covenants. The Receiver's certificates are direct obliga-
tions, sanctioned by the Court, for the payment of money.
The holder of them has a right to ask for payment. The
contract by Crook, Horner & Co. to put the machine in a
certain condition is, in like manner, a direct obligation upon
them and they are responsible to the Receiver for any
damages caused by non-fulfillment of this promise. We
may concede that, to avoid circuity of action, such damages

as the Receiver might sustain can be deducted from the amount of the certificates, if the certificates still remain in the hands of a party to the contract. But a breach of their part of the contract by Crook, Horner & Co., could, by no possibility, *ipso facto*, give the Receiver a right to refuse to pay notes given for the machine, which had been accepted and actually sold by him, and for which these very notes are said to be full payment. If this be so, then *prima facie* the appellants here are entitled to recover on the certificates, and upon the Receiver is laid the burden of proof to show that the appellants have broken their contracts, and to what extent he has been damaged by such breach.

The fact that after Crook, Horner & Co. had *contracted* to put the machine in working order, and had *guaranteed* that it should accomplish certain work, the machine was accepted, and that the bonds were given in payment, appears on the face of the petition, the Court's order and the contract itself. They made the contract and gave the guaranty and received the bonds on or about November 10, 1890. Nothing then remained except for the Receiver to pay his debt authorized by the Court, when it fell due, and for Crook, Horner & Co. to make the machine come up to the guaranty. If Crook, Horner & Co. failed to do this, the Receiver could employ some one else to do it for them, and charge them with the extra expense.

A clearer case of independent covenant could not be found; and on independent covenants, such are the unquestioned rights of the parties. *Central Trust Co.* v. *Arctic Ice Machine Co.*, 77 Md. 237; *Hercules Iron Works* v. *Dodsworth*, 57 Fed. Rep. 556; *Carter* v. *Scargill L. R.*, 10 Q. B. 564; *Parsons on Contracts*, (8th ed.) vol. II, page 680.

The exceptants (*a*) have not given any evidence to show any damage by a breach of their contract by the claimants, (*b*) nor have they attempted to show a breach. These appellants guaranteed not that the machine was in a condition to do the promised work, but that if it were not they would put it into that condition. Before a breach of this contract

can be made out it must be shown that the machine neither did nor could produce the guaranteed results, or else that the appellants neglected, upon request, to put it into the proper condition.

We contend that this is a case where a party accepted a machine and gave his obligation in payment therefor, securing himself by an independent stipulation or contract with a responsible firm ; that he treated the machine as his own, and finally sold it ; that the responsible firm has never been in default in carrying out or tendering its willingness to carry out the stipulation entered into by it ; and that consequently there is no reason why his obligation should not be paid.   If this Court should agree with us, we ask that the order be reversed, with a direction that the auditor's account, so far as it allowed our claim, shall be ratified.   But even if this Court should hold that we were in default, we would then submit, with all confidence, that the order should be reversed, and the account, as stated by the auditor, ratified ; because the Court must not only find us in default, but must also find a damage to the Receiver which is capable of ascertainment.   *Campbell Printing Press Co.* v. *Thorpe*, 36 Fed. Rep. 415.   In this case there is no such damage.

*Herbert H. Preston* (with whom were *John K. Cowen* and *Hugh L. Bond, Jr.*, on the brief), for the appellee.

Crook, Horner & Co. agreed to make a machine, with which they were familiar, work in a place which they had examined, with a supply of water, of which they knew the character and quantity.   They were supposed to know what was necessary, the other parties did not.   The machine had a fair test, of which careful notes were taken ; it did not do the work and Mr. Crook admits it.   Their superintendent did not know what was the matter, nor did the expert, as far as we are informed.

They now make indefinite objections to the temperature of the water and the imperfect fitting of the rooms.   They knew that they were to have bay water, and they had

plenty of it ; they cut off the rooms complained of and still it wouldn't work. Mr. Crook seeks to create the impression that there was really no test of the machine. The correspondence and Mr. Mezick's testimony and memoranda disposes of this. The opinion of the learned Court below covers the case fully, and is well supported by the evidence.

PAGE, J., delivered the opinion of the Court.

This appeal is from an order of the Court below, sustaining the exceptions of the appellees to the allowance by the Auditor of the claim of the appellants. On the fifteenth day of May, 1890, Charles Webb, the Receiver of the Bay Ridge Company, through his agent, Hugh L. Bond, Jr., contracted with a certain William H. Pitcher for the purchase of an ice machine, to be furnished within thirty days, with capacity for making one and one-half tons of ice per day, and for cooling to a temperature of thirty-two degrees Fahrenheit, in all weathers, certain specified spaces in the restaurant building at Bay Ridge. By the agreement Pitcher guaranteed the capacity and character of the machine, and agreed to run the same for ten days after completion to demonstrate its efficiency ; the Receiver to supply the water and steam required. The price of the machine was to be $4,500, to be paid in instalments at different periods, with interest thereon from the date of acceptance, to be secured by notes endorsed by the B. & O. Railroad Co., or some individual endorser satisfactory to said Pitcher.

It was also agreed that the property in the machine should remain in Pitcher until the delivery of the notes, endorsed as stated ; and these were not to be given until the machine was complete and working to the satisfaction of Mr. Bond. Pitcher put up the machine during the summer of 1890. On the thirtieth day of October, of the same year, the Receiver reported to the Court, that " while the machine was partially operated the season of 1890, it

was not completed and working as required until after the close of the season, and your Receiver did not escape all expense on account of ice, as he had hoped.  Your Receiver has therefore agreed with said Pitcher, subject to the approval of this Honorable Court, to accept the said machine and apparatus ; *provided*, the said Pitcher shall obtain the contract and agreement of Messrs. Crook, Horner & Co., a responsible firm of the city of Baltimore, to put the same in good working order at the beginning of the season of 1891, and to guarantee the same, shall in all respects comply with the requirements of the said contract between the said Receiver and said Pitcher, as well when operated during the summer months as at other times, and to pay for the same the sum of $2,000, on or before the 10th of July, 1891, and $2,000 on or before Sept. 1st, 1891, the balance in cash."   By an order passed on the 31st of October, the Court approved of the proposed contract and authorized him to issue his certificates of indebtedness bearing six per cent. interest per annum, to meet the deferred payments. On the 10th day of November ensuing, the Receiver entered into the following contract :

" Whereas, one William H. Pitcher did contract and agree with the said Receiver, by written agreement dated the 15th of May, 1890, to construct and supply ice making and refrigerating plant at Bay Ridge, Anne Arundel County, Maryland, of the description mentioned in said contract, a copy of which is hereto annexed, referred to and made part of this agreement ; and whereas, the said machinery and plant were not completed within the time mentioned in said contract, and could not be tested at the time therein provided; and whereas, the said Pitcher and the said Crook, Horner & Co., as his assignees, are desirous of obtaining a settlement from the said Receiver, and the Circuit Court for Anne Arundel County has authorized said Receiver to issue Receiver's certificates to the amount of $4,000, to pay for said plant ; provided, said firm of Crook, Horner & Co. will contract and agree to put the said machinery and plant

in good working order at the beginning of the season of 1891, and guarantee that the same shall, in all respects, come up to the requirements of the said contract between said Receiver and Pitcher, as well when operated during the summer months as at other times. Now, * * * in consideration of the delivery by the said Receiver of four Receiver's certificates, each for the sum of $1,000, bearing, &c., &c., and the payment of $293.15-100 in cash, in full settlement and payment for said ice machine and refrigerating plant, under said contract between the Receiver and the said Pitcher, the said Crook, Horner & Co. do hereby promise, &c., that they will put said machine and apparatus in complete working order at the beginning of the season of 1891, by the fifteenth day of May, and will cause the same to comply with and come up to, in all respects, the requirements of said contract hereto attached, as well when operated during the summer months as at any time."

The amount provided to be paid under this agreement, that is, $4,293.15, was in full settlement for the machine and refrigerating plant, but it also comprehended payment for balance due for a pump located on the steamboat wharf. In pursuance of this contract, the cash provided for therein was paid, and certificates were issued payable to Pitcher, and upon being endorsed by him were delivered to the appellants. Two of these have been paid and the amounts due on the other two now constitute the appellee's claim. It also appears, that prior to Nov., 1890, Pitcher had become largely indebted to Crook, Horner & Co., partly on account of money advanced to carry out his contract with the Receiver. To secure this, Pitcher turned this account against the Receiver over to the appellants. At that time the Receiver's certificates had not been issued, nor, as appears by the contract of the appellees, as well as by the proof, had the machine been tested. Indeed, as far as the appellants were concerned, it was to enable them to secure the possession of these certificates that the contract of the

10th of Nov. was entered into. The Receiver, by that contract, was to issue the certificates and pay the cash named; and Crook, Horner & Co., on their part, agreed to put the machine in complete working order at the beginning of the season of 1891, and in all respects comply with the requirements resting on Pitcher under his contract. The work Crook, Horner & Co. were to do, was the same that Pitcher's contract required him to do, and the money stipulated to be paid to them under Pitcher's contract could be due only upon the completion of the machines and after they had been tested and accepted according to the original contract. In other words, the consideration passing to Crook, Horner & Co., was the delivery of the Receiver's certificates, which Pitcher had agreed to turn over to them, and the duties they had imposed upon them were only to complete Pitcher's work on the machines. For greater certainty as to the nature of the transaction, the contract explicitly stated that the four Receiver's certificates, each for $1,000, and the payment of the $292.15 in cash, "were in full settlement and payment for said machine and refrigerating plant under said contract between the Receiver and said Pitcher."

The attitude of the appellants under this contract, therefore was that of a substitute for Pitcher. Having received the promise of the compensation, they assumed his obligations. It does not seem to be seriously contended that the machine was ever brought up to the requirements of the contract. Mr. Crook himself, stated that the machine had never been made to accomplish successfully the test required by the contract, and this is supported by the weight of the testimony. In 1891 work was delayed by the breaking down of the boiler until about the middle of June, and afterwards by the putting in of a larger smoke stack, until the middle of August, so that actual tests were begun about the last of August or the first of September, and were continued (according to Mr. Crook) until the 25th of September, when they were discontinued by agreement, because of the late-

ness of the season, to be renewed in the spring of 1892. That these tests were unsatisfactory is clearly shown, and Mr. Crook seems to admit this, when he says that in 1892 he came "to see Mr. Bond about starting up the machine, because they refused to pay these other two Receiver's bonds, and *we* were anxious, not only to get the bonds paid, but make the machine *work and come up to our guarantee.*" In 1892 the appellees were informed by Mr. Bond that "he did not have anything to do with Bay Ridge any more, that another company had it  *  *  *  *  and they would not have any use for the ice machine that summer." And so no further effort appears to have been made to perfect the machine. On the 27th day of January, 1893, the machine, together with all the real and personal property of the Bay Ridge Company, was sold by Mr. Stockett, trustee under a decree passed in certain foreclosure proceedings by the Circuit Court for Anne Arundel County, sitting in Equity.

In view of what has been said, we think this is a case where a machine, having been ordered by the contractor, in an uncompleted condition, a third party, with the concurrence of the original contractor, agrees, in consideration of having received the obligations of the contractee for the whole purchase money, to complete it according to the terms of the original contract. And under these circumstances, the appellants having so agreed, and having taken such obligations, with stipulations so to complete the work, with a full knowledge of all the facts of the case, hold the obligations subject to such rights in favor of the Receiver, as would have existed had they remained in the hands of Pitcher, the original contractor.

Now, the original contract provides that the machines should have " capacity for making one and one-half tons of ice per day of twenty-four hours, and of cooling to a temperature of thirty-two degrees Fahrenheit, in all weathers, the following spaces," &c. And that Pitcher will run the same for ten days after completion, to demonstrate the char-

acter and efficacy thereof. This was a warranty. An acceptance of the machine was no waiver of it, and, if having accepted it, there was a breach, the Receiver could either maintain an action for a breach of the warranty, or recoup the damages sustained in the vendor's suit. *Central Trust Co. v. Arctic Ice M. Co.,* 77 Md. 238. In this case there was no acceptance of the machine by the vendee. That it was taken possession of by the trustee appointed by the Circuit Court in the foreclosure proceedings, and with other property of the Bay Ridge Co., sold, is true. But this cannot be regarded as an acceptance by the vendee. To entitle the appellants to be paid, they must show performance on their part, or some legal excuse for their failure to perform, according to the terms of their contract, and having failed to show either, their claim should not be allowed.

*Order affirmed and cause remanded.*